UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRYAN EASON,

        Petitioner,                  Civil Case No. 18-10727

v.

                                        Honorable Linda V. Parker

J. A. TERRIS,

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

### I. Introduction

Federal inmate Bryan Eason ("Petitioner") has filed a pro se habeas corpus petition under 28 U.S.C. § 2241. The focus of Petitioner's pleading is a prison disciplinary proceeding. Petitioner's only ground for relief is that he was found guilty of a minor assault on a correctional officer even though his touching of the officer was accidental. Respondent urges the Court to deny the petition because Petitioner's right to due process was not violated during the disciplinary proceedings and there was "some evidence" to support the disciplinary hearing officer's decision. The Court agrees and is denying the petition.

## II. Background

On November 25, 2015, a federal district court judge in the Eastern District of Wisconsin sentenced Petitioner to 97 months in prison for conspiracy to import, distribute, and possess with intent to distribute methylone. (*See* Resp. Ex. 1 at 2. ECF No. 4-2.) In 2016, while Petitioner was serving his sentence at the Federal Correctional Institution in Milan, Michigan (FCI-Milan), he was charged with violating Federal Bureau of Prisons Code 224 (assaulting a person without causing a serious injury). *See* 28 C.F.R. § 541.3, Table 1. The reporting officer, J. Hermanson, described the incident as follows:

> On Thursday 7-28-2016 . . . I was monitoring the inside compound during the Dinner Meal. At approximately 4:45 PM I was standing near the F-1 Unit door and responded to an inmate pounding on the door in an attempt to get my attention[. I]nmate Easton, Bryan 13233-089 stated that he had to go to the insulin line. Inmate Eason produced a diabetic card to verify he is on the Diabetic list to be released early for the Dinner Meal. I opened the door so he could attend [the] insulin line. As I was opening the door to F-1 so inmate Eason could exit the unit he was stating, "here is my card I know what you are on." I told inmate Eason to go to [the] insulin line and as I was securing the door to F-1 inmate Eason struck my left forearm with the back side of an open hand stating "Look see my card!" I immediately sent inmate Eason to the Operations Lt. without any further incident.

(Resp. Ex. 2 at 1, ECF No. 4-3.)

Lieutenant S. Magulick interviewed Petitioner on the same day as the incident. He wrote in a memorandum about the incident that Petitioner had

2

become agitated when Officer Hermanson was securing the unit door and that Petitioner then struck Officer Hermanson on the left forearm with an open hand. (*Id*. at 3.) Petitioner told Lieutenant Magulick" "It was an accident. I just wanted to show him I had [my] ID Card." (*Id*.)

The matter was referred to the Federal Bureau of Investigation (FBI) for possible criminal prosecution, but the FBI declined to take any action. (*See* Resp. Ex. 3 at 1, ECF No. 4-4.) During the subsequent internal investigation, Petitioner informed Investigating Lieutenant S. Pierson that he "unintentionally made contact with [Officer Hermanson's] arm, brushed his arm while [he was] talking with [his] arms and moving fast to [the] pill line." (Resp. Ex. 2 at 2, ECF No. 4-3.)

The matter was referred to the Unit Discipline Committee (UDC), which held a hearing on August 24, 2016. Petitioner made the following comments at the hearing:

> I did not say "look see my card." I said something like "thanks man." I accidentally touched him, apparently, and he accused me of striking him. It was just a hand gesture, a movement in a hurry to get to [the] pill line. I was not trying to contact him.

(*Id*. at 1.) The UDC referred the matter to the Discipline Hearing Officer (DHO) for further review. *Id.*

The DHO held a hearing on August 31, 2016. Officer Sizemore was the staff representative at the hearing. He confirmed that Petitioner had been afforded

3

his right to due process and that Petitioner had a clean history until then. Although Officer Sizemore did not observe the incident with Officer Hermanson, he stated that, according to Petitioner, the incident happened, but it was an accident. (Resp. Ex. 7 at 1, ECF No. 4-8.) Petitioner added:

> I wanted the staff rep here to give his opinion of what happened. It definitely was an accident. I've been doing well since I've been here at Milan. I go to school, work out, and read the bible. That's it. My Case Manager had just told me I was headed to camp if I didn't catch a shot. It truly was an accident. Yes, it did happen.

*Id.*

The DHO considered all the evidence and concluded that Petitioner was guilty of committing the charged act. (*Id.*) As punishment, the DHO deducted seven days from Petitioner's good conduct time and restricted Petitioner's commissary and telephone privileges for thirty days. (*Id.* at 3.)

Petitioner appealed the DHO's decision to the Regional Administrator for the Federal Bureau of Prisons. The Regional Administrator acknowledged Petitioner's defense that the touching was accidental, but denied the appeal. She stated that the assault may have been intentional because Petitioner was agitated during the incident and he backhanded the officer's forearm while telling the officer to look at his medical card. (*See* Resp. Ex. 8 at 7, ECF No. 4-9.)

4

Petitioner appealed the Regional Administrator's decision to the Office of National Inmate Appeals. The National Administrator concurred with the Regional Administrator's decision and denied Petitioner's appeal at the final step of the administrative proceedings. (*Id*. at 10.) The National Administrator stated that the DHO's determination was reasonable and supported by the evidence, and that, regardless of Petitioner's explanation, his conduct involved the unconsented touching of another person, which was an element of the prohibited act. (*Id.*) The National Administrator also opined that Petitioner's due process rights were upheld during the disciplinary process and that the sanctions imposed were commensurate with the severity level of the offense and in compliance with policy. (*Id*.)

Petitioner filed his habeas corpus petition on March 1, 2018.[1] He wants the Court to expunge the disciplinary incident report, reduce the code violation to a more appropriate one, and eliminate the nine custody points that he received for violating Code 224. As noted above, Respondent urges the Court to deny the petition.

---

[1] At the time, he was confined at FCI-Milan. Records maintained by the Federal Bureau of Prisons on its official website indicate that Petitioner currently is confined at Ashland FCI in Ashland, Kentucky. *See* https://www.bop.gov, using inmate number 13233-089.

## III. Analysis

### A. Legal Framework

Petitioner's only argument is that his touching of Officer Hermanson was unintentional and that it did not amount to an assault under Code 224.  This claim is properly before the Court because Petitioner's loss of seven days of good-conduct time affects the fact or duration of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 490, 500 (1973).  However, Petitioner is entitled to habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

Prisoners may claim the protections of the Due Process Clause, and they may not be deprived of life, liberty, or property without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  But the full panoply of rights due a defendant in a criminal prosecution does not apply to prison disciplinary proceedings.  *Id*.

"Not much evidence is required to support the action of a prison disciplinary board," *Williams v. Bass,* 63 F.3d 483, 485 (6th Cir. 1995), and

> [t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing.

*Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985) (reversing state court decision granting summary judgment to inmates, finding that the evidence, although it "might be characterized as meager," supported the prison disciplinary board's findings). In other words, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id*. at 455.

This standard has been described as a "meager threshold." *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007)). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). A reviewing court is not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence. *Id*. at 455. "Furthermore, this court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz v. Grayson*, 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (citing *Turney v. Scroggy*, 831 F.2d 135, 139-40 (6th Cir. 1987)).

B.  Application

Petitioner was charged with violating Code 224, which is a "high severity level prohibited act." 28 C.F.R. § 541.3, Table 1. The act is described in the federal regulation as "[a]ssaulting any person." *Id*. The charge "is used when less serious physical injury or contact has been attempted or accomplished by an inmate." *Id*.

The evidence in this case included Officer Hermanson's incident report, Lieutenant Magulick's memorandum, the staff representative's comments, the medical assessments and photographs, which showed no injuries to either Petitioner or Officer Hermanson, and Petitioner's statements during the investigation and disciplinary proceedings. The DHO considered all the evidence and concluded that Petitioner committed the prohibited act. Although Petitioner claimed that the touching was accidental, the DHO gave greater weight to Officer Hermanson's version of the facts. (*See* Resp. Ex. 7 at 3, ECF No. 4-8.)

The DHO's decision is entitled to deference by a reviewing court, *Cook v. Warden, Fort Dix Corr. Inst.*, 241 F. App'x 828, 829 (3d Cir. 2007) (citing *Hill*, 472 U.S. at 455-56), and in this case, the record supports the DHO's decision. Petitioner admitted that he touched Officer Hermanson, and he does not dispute that the touching was not consensual. Although Petitioner maintains that the

8

touching was accidental, there was some evidence that he may have intentionally hit the officer on the arm.  As the Regional Administrator pointed out, Petitioner was agitated during the incident and he backhanded the officer's forearm while telling the officer to look at his medical card.

Even if Petitioner did not mean to strike or harm the officer, the "lack of specific intent is not a valid defense to assault in the context of a prison disciplinary action." *Jones*, 637 F.3d at 847.  Furthermore, the DHO determined that Petitioner's intent was irrelevant because he did touch or strike the officer's arm, and the National Administrator stated that the unconsented touching of another person was an element of the prohibited act.

## IV.  Conclusion

The DHO's decision "was not so lacking in evidentiary support as to violate due process," and the decision was not "otherwise arbitrary."  *Hill*, 472 U.S. at 457.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that, if Petitioner appeals this decision, he may proceed *in forma pauperis*, because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

**IT IS FURTHER ORDERED** that Petitioner is not required to move for a certificate of appealability because the statute governing certificates of appealability "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process." *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004).

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: May 8, 2019
I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 8, 2019, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager